**30**

PENNSYLVANIA RAILROAD
COMPANY

v.

TRANSPORT WORKERS UNION OF
AMERICA, A.F.L.-C.I.O.; Michael J.
Quill; F. A. Sheehan; Eugene Attreed;
Andrew Kaelin; C. A. Quigley; Locals
2013 and 2042 of United Railroad Work-
ers Division of Transport Workers Un-
ion of America, A.F.L.-C.I.O., in their
own right and as representative of oth-
er local unions of Transport Workers
Union of America, A.F.L.-C.I.O. and as
representative of Transport Workers
Union of America, A.F.L.-C.I.O.; J. H.
Turic; W. J. Friel; E. D. Halstead; R.
R. LaBriola; Vincent J. Elliott; John
Duranto; Anthony Mammarelli; R. J.
D'Urbano; F. A. DiPaolatonio; Charles
Dunning; T. R. Durbano, individually,
as officers of Locals 2013 and 2042 and
as representatives of the members of
Transport Workers Union of America,
A.F.L.-C.I.O. employed by Plaintiff.

Civ. A. No. 22501.

United States District Court
E. D. Pennsylvania.

May 8, 1957.

Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., for plaintiff.

O'Donnell & Schwartz, New York City, for defendant.

LORD, District Judge.

After hearing on plaintiff's application for preliminary injunction and a review of the evidence, the Court makes the following:

### Findings of Fact

1. Plaintiff is a Pennsylvania corporation doing business as an interstate common carrier by railroad in the Eastern District of Pennsylvania.

2. Defendant, Transport Workers Union of America, A.F.L.–C.I.O., which will hereafter be referred to as "TWU", is a labor union and an unincorporated association, doing business in the Eastern District of Pennsylvania, through its local unions and international representatives, which represents approximately 20,000 of plaintiff's employees, including carmen, boilermakers, electricians, car inspectors, and others.

3. Defendants, Locals 2013 and 2042, are unincorporated associations and local unions of defendant TWU's United Railroad Workers Division, doing business in the Eastern District of Pennsylvania, and are representative of the other local unions of defendant TWU and of defendant TWU itself. The interest of all members, other locals and of defendant TWU will be adequately represented in the premises by defendants, Locals 2013 and 2042.

4. Defendant, Andrew Kaelin, is a Vice President and coordinator of defendant TWU and the chief international officer representing defendants TWU and Michael Quill in the Eastern District of Pennsylvania. Defendant, C. A. Quigley, is the International Representative of defendants TWU and Michael Quill for the Eastern District of Pennsylvania.

5. Defendants Turic, Friel, Halstead and Elliott are officers and representatives of defendant Local 2013, and are truly representative of the membership of said defendant local and of defendant TWU employed on plaintiff's system.

6. Defendants Duranto, D'Urbano, DiPaolantonio, Dunning and Durbano are officers and representatives of defendant Local 2042 and are truly representative of the membership of said defendant local and of defendant TWU employed on plaintiff's system.

7. There are now in effect between plaintiff and defendant TWU, as the certified bargaining representative of certain of plaintiff's employees, collective bargaining agreements governing rates of pay, rules, and working conditions, and providing a method of handling disputes growing out of grievances or out of the interpretation or application of the collective bargaining agreements.

8. The applicable regulations contained in these agreements provide for the handling of grievances or claims by presenting them first to the employee's foreman and thereafter to the Superintendant-Personnel and to the Manager-Labor Relations, who is the chief operating officer of plaintiff, to handle such disputes.

9. The agreement of January 5, 1956 establishes a System Board of Adjustment under the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., which has jurisdiction to handle and decide all disputes growing out of grievances or out of the interpretation or application of the collective bargaining agreements between plaintiff and TWU which have not been disposed of in the processes up to and including the Manager of Labor Relations.

10. For many years prior to April 1, 1957 the work of chaining or unchaining

cars, coupling or uncoupling air, steam, or signal hose, lifting drop-type draw bars on locomotives, and testing airbrakes has been performed by employees represented by defendant TWU and employees represented by the Brotherhood of Railway Trainmen.

11. Prior to April 1, 1957 under the labor agreements between plaintiff and the Brotherhood of Railroad Trainmen, yard trainmen, when used to perform work of the kind referred to in the preceding paragraph in yards in which and on tracks on which carmen performed such duties on August 1, 1942, became entitled to additional wage payments.

12. On March 8, 1957 plaintiff and the Brotherhood of Railroad Trainmen entered into an agreement effective April 1, 1957 under which yard trainmen were to be paid an allowance of 48¢ for each shift, in consideration of which they might be required to perform work of the kind referred to in paragraph 10 of these findings incidental to the movement or switching of cars by the crews in which they are working, and no other additional wage payments.

13. On April 1, 1957 and thereafter, defendant TWU and certain of its individual members have filed grievances under the collective bargaining agreements in effect between plaintiff and TWU claiming penalty payments on the ground that the performance of work by yard trainmen on the same shift and at the same place in which such TWU members are employed is a violation of the agreements between plaintiff and defendant TWU. These grievances are being processed in accordance with the provisions of the agreements between plaintiff and TWU, and if the orderly processes of the grievance procedure are followed, they will result in an interpretation of the agreement as to whether the use of yard crews to do such work is a violation of the existing agreement between plaintiff and the TWU.

14. These grievances are minor disputes under the Railway Labor Act which should be processed under the grievance procedure provided by the existing agreements between plaintiff and TWU through the System Board of Adjustment so provided, if they are not disposed of at an earlier stage of the grievance procedure.

15. Plaintiff has processed and is willing to continue to process these grievances through every step of the grievance procedure to a final determination.

16. Without continuing to process these grievances in accordance with the established procedure, defendant TWU and its members have threatened to strike against plaintiff to compel plaintiff to accede to defendants' interpretation of the existing agreement between plaintiff and TWU to the effect that the members of TWU have exclusive rights in the work referred to in paragraph 10 of these findings.

17. Plaintiff is a common carrier engaged daily in carrying thousands of passengers, mail, and vast tonnages of foodstuffs, military supplies and other commodities which are of importance to the national economy in the thirteen-state area which is served by plaintiff's system.

18. A strike will cause the cessation of railroad operations on plaintiff's system and will cause plaintiff to lose revenues of many thousands of dollars for each day of such stoppage, a substantial part of which plaintiff will not be able to regain.

19. Plaintiff is threatened with irreparable loss and damage if defendants persist in threatening to strike or in striking against plaintiff.

Conclusions of Law

1. This Court has jurisdiction over the plaintiff and all of the named defendants and over the subject matter of this action.

2. The questions raised by the grievances filed by defendant TWU and its members involve the interpretation of the existing collective bargaining agreements and constitute minor disputes which should be processed in accordance with the grievance procedures establish-

ed in the agreements of plaintiff and TWU under the Railway Labor Act through the System Board of Adjustment and to a neutral referee, if the latter step should become necessary.

3. The threat of a strike to compel plaintiff to accede to defendants' interpretation of the collective bargaining agreements rather than processing these disputes through the prescribed grievance procedures, is illegal under the provisions of the Railway Labor Act. Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Company, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed. 2d 622.

4. Plaintiff is entitled to a preliminary injunction against defendants to restrain them from threatening to strike and from striking for the aforesaid illegal purpose.

5. The Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., has no application to the facts of this case.