**PENNSYLVANIA RAILROAD COMPANY**

v.

**LOCAL 2013 OF UNITED RAILROAD WORKERS DIVISION OF TRANSPORT WORKERS UNION OF AMERICA, AFL–CIO, in its own right and as representative of its membership, John W. Mellon, Jr., Edward B. Quigley, J. E. Whitehead, V. J. Elliott, E. D. Halstead, individually as officers of Local 2013 and as representatives of the members of Local 2013, employed by Plaintiff.**

Civ. A. No. 26838.

United States District Court
E. D. Pennsylvania.

Oct. 13, 1959.

Owen B. Rhoads, Richard N. Clattenburg, Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., for plaintiff.

Nathaniel Budin, Philadelphia, Pa., O'Donnell & Schwartz, New York City, for defendants.

EGAN, District Judge.

Effective August 3, 1959, plaintiff, a common carrier by railroad, abolished the position of car inspector or carman on the second trick, from 2:30 P.M. to 11 P.M., Monday to Friday, at the Pottsville yard of its railway. The work which the displaced carman did was given to a member of the crew. It consisted of "bleeding" of air from the brake systems of cars. The displaced carman was a member of the defendant Local of the Transport Workers Union. It was claimed by the defendant, Mellon, president of the Local, that the work of "bleeding" air from the brake system of cars belonged exclusively to car inspectors and that consequently plaintiff, in abolishing the second trick car inspector position, had violated the collective bargaining agreements existing between the parties. Plaintiff's representatives disagreed and so advised Mellon. This led to a dispute between plaintiff and the union which ultimately resulted in this litigation.

On August 6, 1959, defendant Mellon wrote a letter to plaintiff's foreman on behalf of one Yodar, the displaced car inspector, claiming eight hours' pay for August 3, 1959, the first day of his displacement, and each subsequent day he was thus out of work. This was the first step in the grievance procedure set up by the parties.[1] The body of the letter reads as follows:

"We are hereby filing claim in behalf of S. A. Yodar, Jr., Car In-

---

1. "*Regulation No. 7—Appeals and Grievance Procedure* * * * 7-A-2. (Effective February 1, 1956) When it is considered that an injustice has been done with respect to any matter other than discipline, or claims for compensation alleged to be due, the employe affected or his duly accredited union representative, may, within twenty (20) calendar days present the case, in writing, to the Employe's Foreman. If the decision of his Foreman, which shall be in writing, is unsatisfactory, or if the Foreman does not reply within fifteen (15) calendar days from the date the case was presented, the case may then be appealed in writing, within twenty (20) calendar days by the employe affected, or by the said union representative in his behalf, to the Superintendent of Personnel. When the appeal is transmitted by United States mail, the date of mailing as indicated by the postmark or other Post Office record will be considered the date

spector for eight (8) hours at the pro rata rate of Car Inspector's rate of pay from August 3, 1959 until such time as claim is adjusted, excluding rest days.

"On August 3, 1959 Management abolished the middle trick Car Inspector's position at Pottsville and assigned Trainmen to do a certain amount of duties which accrue to Car Inspectors.

"We contend that by arbitrarily abolishing this position of Car Inspector while part of the duties remain necessary, and the assignment of Trainmen to perform these duties is a violation of our Agreement.

"Claimant is now furloughed as a result of this move.

"We contend that Claimant should be compensated as above stated and the middle trick Car Inspector's position at Pottsville should be reestablished."

When plaintiff refused to reinstate the displaced employee, defendant Mellon, as president of defendant Local, bypassing the grievance procedure and becoming impatient with the time element required therein, sent a telegram to Herman Kendall, Manager, Labor Relations, Philadelphia Region, Pennsylvania Railroad, at his office in Philadelphia, reading:

"This is to advise you that the Executive Board of Local 2013 at meeting on August seventh 1959 authorized calling a 24 hour meeting on Friday August 14 1959 of all shop stewards, committeemen and Vice-Presidents in order to inform them of attitude of Management. This action found necessary after

Management refused to meet with Local Union and International officers to settle a problem."

On August 10, 1959 plaintiff, through its proper officers, received a letter dated August 7, 1959, which informed plaintiff that a list of named individuals numbering over 900 "are hereby certified as local union representatives of this union on (sic) the Philadelphia Region Local 2013 in the capacity of committeemen." The list contained practically the entire membership of the defendant Local. Plaintiff advised defendant Local that the calling of a 24-hour meeting on Friday, August 14, 1959 of all shop stewards, committeemen and vice-presidents to the total named in the letter would violate the intent and purpose of the Railway Labor Act and the provisions of the collective bargaining agreements between the parties. It would have brought about a complete work stoppage in plaintiff's Philadelphia region and resulted in a one-day strike.

Thereafter, on August 13, 1959, plaintiff sought relief from this Court under Title 28 U.S.C. §§ 1331 and 1337. It relies on the Railway Labor Act, Title 45 U.S.C.A. § 152, First and Second, § 155, First, and § 156, and also the applicable provisions of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. Plaintiff moved for a restraining order and for a temporary injunction pending final hearing. A temporary restraining order was entered on August 13, 1959 after an informal hearing at which both sides were represented. Thereafter the matter came on for hearing on plaintiff's complaint and defendant's cross-motion for a temporary injunction requiring that the status quo ante be reinstated by putting the displaced carman back to

of appeal. Unless decision is received from the Superintendent of Personnel within thirty (30) calendar days from date discussed it will be considered his decision is denial. If the case is not adjusted satisfactorily it may then be handled by the employe or by the duly accredited union representative with the Manager of Labor Relations. If the Manager of Labor Relations does not make a

decision within sixty (60) calendar days of the date of discussion with him the case shall be considered denied.

"When an employe lists a claim with the Superintendent of Personnel, or Manager of Labor Relations, the duly accredited union representative will be furnished a copy of the letter, addressed to the employe, setting meeting date and place for discussion of such claim."

work pending final disposition. Testimony was produced for both sides and counsel argued the matter on briefs and supplemental briefs. The temporary restraining order was continued in effect by agreement of the parties and the matter is now ripe for decision.

The Court makes the following

### Findings of Fact

1. Plaintiff, The Pennsylvania Railroad Company, a Pennsylvania corporation, has its principal office in the City of Philadelphia, Pennsylvania, and is a common carrier by railroad engaged in interstate commerce.

2. Defendants are Local 2013 of United Railroad Workers Division of Transport Workers Union of America, AFL–CIO, with principal office in the City of Philadelphia and certain named officers of said Local union individually as officers of said Local and as representatives of the members of said Local employed by plaintiff.

3. There are presently in effect collectively bargained labor agreements, concluded in accordance with the terms of the Railway Labor Act, between plaintiff and defendant union, the latter acting as a representative of some, but not all, of plaintiff's employees, which agreements govern the rates of pay, rules and working conditions of said employees, and provide a method of handling disputes growing out of grievances or out of the interpretation and application of said agreements.

4. Under said agreements, a grievance procedure has been established whereby disputes, grievances or claims are presented first to the aggrieved employee's foreman, then to plaintiff's Superintendent-Personnel and then to plaintiff's Manager-Labor Relations.

5. Failing settlement at the levels indicated, the grievance then goes to a System Board of Adjustment, established pursuant to the provisions of § 3, Second, of the Railway Labor Act, which is implemented by a written agreement between the parties (Ex. P–2) dated January 5, 1956, effective February 1, 1956, which sets up a Board of four members, two representing each side. If the Board cannot reach a decision, the dispute then goes to a neutral referee selected by the Board; if the Board cannot agree on a neutral referee, he shall be designated by the National Mediation Board at the request of any two members of the Board, and his decision shall be final and binding.

6. Effective August 3, 1959 plaintiff abolished the position of car inspector on the second trick at plaintiff's Pottsville, Pennsylvania, yard, in which position there had been employed one car inspector or carman for the assigned reason that traffic had declined and that he was no longer needed.

7. On August 3, 1959 at the request of defendant Mellon, H. W. Manning, Superintendent-Personnel, of plaintiff's Philadelphia region, met with Mr. Mellon and explained that the second trick position of car inspector at Pottsville had been abolished because that position had become unnecessary.

8. The union contended that certain work, namely, the "bleeding" of air from the brake systems of cars belonged exclusively to car inspectors or carmen and was now being performed by trainmen on the second trick. Plaintiff contended that such work did not belong exclusively to car inspectors and could properly be performed by trainmen.

9. Disputes had previously arisen between the plaintiff and defendant union regarding the exclusive right of car inspectors to "bleed" cars and they were referred to System Boards of Adjustment for arbitration, after intermediate steps had failed to bring about a settlement of the grievance.

10. On August 4, 1959, in a telephone conversation, H. W. Manning, Superintendent-Personnel of plaintiff's Philadelphia region, told defendant Mellon that the dispute would be processed quickly through the normal intra-company grievance channels.

11. On August 6, 1959 defendant Mellon wrote to J. E. Wagner, plaintiff's

foreman at Reading, Pennsylvania, filing a claim on behalf of the car inspector who had been displaced.

12. By letter dated August 7, 1959, defendant Mellon wrote to Manning informing him that 989 individuals, who were members of the Local union, were being certified as Local union representatives in the capacity of committeemen.

13. All of the individuals certified as Local union representatives in the capacity of committeemen constituted substantially all of the membership of defendant Local 2013 employed by plaintiff in the Philadelphia region.

14. On August 10, 1959, plaintiff received a telegram from defendant Mellon as president of defendant union advising that the executive board of defendant union had authorized calling a 24-hour meeting on Friday, August 14, 1959, of all "shop stewards, committeemen and vice-presidents."

15. On August 12, 1959 plaintiff offered to accelerate the processing of the grievance by having the matter submitted to the Superintendent-Personnel, the second step of the intra-company grievance procedure.

16. Defendants insisted on by-passing the grievance procedures of the Railway Labor Act and the agreements existing between plaintiff and defendant union and insisted upon having the dispute decided by an impartial arbitrator.

17. The grievance in this case involves the job of one car inspector or carman at Pottsville.

18. Any right of that car inspector to continue in the job he formerly held is governed by existing agreements.

19. A meeting around the clock of the 989 newly designated committeemen of Local 2013 would constitute a serious work stoppage and would be tantamount to a one-day strike over a minor dispute subject to determination under existing labor agreements which had been negotiated by the parties.

20. Plaintiff's yards, which would be affected by a work stoppage by members of the defendant union working in the Philadelphia region, are vital parts of plaintiff's facilities for handling freight and passengers moving in interstate and foreign commerce to and from Philadelphia.

21. A work stoppage by members of the defendant union would involve many facilities of plaintiff in the Philadelphia area, such as passenger terminals, car shops, engine houses, power plants and other facilities, and result in great inconvenience and damage to the traveling and shipping public.

22. A work stoppage by members of defendant union working in the Philadelphia region would cause serious dislocation of, and interruption to, the national railway transportation system, prevent or interrupt transportation of passengers, prevent the transportation of freight over lines of plaintiff, from and to connecting carriers, and prevent the transportation of military supplies and other materials over the lines of plaintiff and from and to connecting carriers.

23. Such a work stoppage would result in a loss to plaintiff of approximately $100,000 per day during the continuance of any such work stoppage, and in addition, would cause plaintiff to lose traffic which could be permanently and irrevocably diverted from plaintiff to other and competing forms of transportation, all to plaintiff's immediate and irreparable injury and loss.

Conclusions of Law

1. Under the United States Code, Title 28, §§ 1331 and 1337, this Court has jurisdiction over this action which arises under the Railway Labor Act, U.S.C.A., Title 45, § 152, First and Second, § 155, First and Second, § 156, and under the Interstate Commerce Act, U.S.C.A., Title 49, § 1 et seq.

2. Defendants have failed to observe the grievance procedures provided for under the agreements between plaintiff and defendant union.

3. Defendants have failed to observe the grievance procedures provided for under the Railway Labor Act.

4. Defendants have failed to pursue and exhaust the administrative remedies provided for under the Railway Labor Act.

5. The dispute involved in this case concerns existing agreements and the claims are to rights accrued thereunder rather than to have new rights created for the future.

6. This case involves a minor dispute.

7. Defendants have adequate legal remedies to process their grievances through the procedures established by the Railway Labor Act and by the agreements between plaintiff and the union.

8. There is no showing of irreparable harm to the defendants in leaving them to their remedies under the grievance procedures of the Railway Labor Act and the agreements between plaintiff and the union.

9. A work stoppage through a 24-hour meeting of committeemen who constitute substantially all of the defendant union members employed by plaintiff in the Philadelphia region, or a strike, would be illegal under the Railway Labor Act and the agreements between plaintiff and defendant union.

10. A work stoppage through a meeting of committeemen who constitute substantially all of the defendant union members employed by plaintiff in the Philadelphia region, or a strike, would violate the purpose of the Railway Labor Act to avoid the interruption of commerce or the operation of any carrier engaged in commerce.

11. Plaintiff is entitled to injunctive relief restraining and enjoining the defendants and all their officers, agents, employees and attorneys from calling, instigating, authorizing, engaging or participating in any strike, work stoppage or picketing on plaintiff's premises.

12. Defendants are not entitled to the relief requested in their cross-motion heretofore filed with the Court on August 18, 1959, and said motion is hereby dismissed.

13. The Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., does not forbid the issuance of an injunction in this type of case. In other words, it has no application to the facts of this case because it involves a minor labor dispute.

## Discussion

While there were times during this controversy when the defendants seemed to indicate that they considered this a major dispute, that position has been abandoned. At page 8 of defendants' brief in opposition to the application for a temporary injunction, they say, "It is not contended that the dispute concerning the assignment of carman's work at Pottsville, Pa., on August 3, 1959 is a major dispute and, therefore, not enjoinable. It is contended that it is a departure from the status quo ante pending negotiation and settlement or final disposition of a major dispute, namely, the dispute concerning the scope of the work of a carman in the collective bargaining agreement."

The sweep of the machinery set up to determine disputes, both major and minor, under the Railway Labor Act, is nowhere better explained than in the case of Butte, Anaconda & Pacific Railway Co. v. Brotherhood of L. F. & E., 9 Cir., 1959, 268 F.2d 54, page 58:

"(1) At the outset it is necessary to note the distinction between so-called major and minor disputes under the Railway Labor Act. In Elgin, Joliet & Eastern Railway Co. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886, the difference between these two kinds of dispute was explained as follows:

" 'The first relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

" 'The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement. * * *'

"As to both kinds of dispute, the act requires that the parties enter into negotiation as the first step towards settlement of the controversy. Where negotiation fails, the procedures diverge. Major disputes go first to mediation before the National Mediation Board; if that fails, then to acceptance or rejection of arbitration; and finally to possible presidential intervention. If all this fails, compulsory processes are at an end, and either party may resort to self-help. Elgin, Joliet & Eastern Railway Co. v. Burley, supra, 325 U.S. at page 725, 65 S.Ct. at page 1290. The Norris-La-Guardia Act prohibits the issuance of an injunction in a railway labor case involving a 'major dispute.' Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 353 U.S. 30, 42, 77 S.Ct. 635, 1 L.Ed.2d 622.

"In the case of minor disputes, if negotiation fails either party may submit the matter to the appropriate division of the National Railroad Adjustment Board. The awards of the several divisions of the Adjustment Board are final and binding. Neither party is permitted to resort to self-help. A strike involving a so-called minor dispute is therefore to be enjoined. Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., supra.".

■ It may be well to point out that a minor dispute remains a minor dispute regardless of contemporary negotiations for changes in the agreement. A minor dispute must be determined on the basis of an existing agreement and not that of some future agreement which may become effective at a distant date. Negotiation for future changes in car inspector's duties which are currently going on have no relevance to the issue discussed with management, in this case on August 3 and 12, 1959, as a result of which defendants called the 24-hour all day meeting. We reject defendants' argument to the contrary.

The Court has been unable to find any case reported or otherwise where all or substantially all members of a local union have been designated union representatives. However, in the United States District Court for the Southern District of New York at Civil Action No. 113-132, not reported, Judge Ryan issued a temporary restraining order against a threatened special 24-hour around-the-clock meeting of members of Local 2001, T.W.U. AFL–CIO. He found support for injunctive relief in Chicago River & Indiana R. R. Co. v. B. R. T., which had then been decided by the Circuit Court of Appeals for the Seventh Circuit, 229 F.2d 926, and since affirmed by the Supreme Court, 353 U.S. 30, 39, 77 S.Ct. 635, 1 L.Ed.2d 622. See also our colleague Judge Lord's opinion in Pennsylvania Railroad Co. v. Transport Workers Union, D.C., 178 F.Supp. 30.[2]

In the case before us, where all or substantially all of the members of defendant Local have been designated union representatives, the same decision must be reached; otherwise, the collectively bargained agreements leading to compulsory arbitration would be frustrated

2. For somewhat similar intervention by the Court in threatened action by defendant's sister Local (Local 2035) at the Conway Yard near Pittsburgh, Pa., see U. S. District Court for the Western District of Pennsylvania, Civil Actions No. 16,523 and No. 17,521, respectively, both unreported.

and the clear purpose of the Railway Labor Act defeated.

We next come to the contention that the District Court should enter an order restoring the status quo ante by forcing plaintiff to rehire the car inspector until the matter is determined. In the alternative, it is suggested that it be made a condition of granting a restraining order. Under the law and the decided cases, we believe that we have no jurisdiction to pass even preliminary judgment upon the merits of disputes committed by Congress to the exclusive jurisdiction of the National Railroad Adjustment Board or a Board of Adjustment. This was decided by the Supreme Court in Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318. In that case, the Order of Railway Conductors petitioned the District Court to enjoin the bankruptcy trustees of a railroad from shifting certain jobs from the conductors to the Brotherhood of Railroad Trainmen. The Order of Railway Conductors whose members had operated the trains in question for thirty-five years as a result of negotiations covering rules, rates of pay and working conditions, contended that its contract with the railroad expressly provided that its members would not be replaced without further agreement. The Supreme Court, overruling the District Court, clearly refused to grant equitable relief to maintain the status quo ante pending the decision of the Adjustment Board. It declared that no such action was desirable since the Adjustment Board could grant a money award if it were later decided that the Order of Railway Conductors was entitled to the jobs under the contract.

The Court of Appeals for the Fifth Circuit, in Missouri-Kansas-Texas Railroad Co. v. Brotherhood of Locomotive Engineers, 266 F.2d 335, held that the District Court had no power to order the maintenance of the status quo ante as a condition to granting injunctive relief to a railroad until a minor dispute was decided by the National Railroad Adjustment Board. In that case the railroad changed freight train runs and freight service terminals which resulted in the abolition of positions. When the unions protested and threatened to strike, the District Court issued an injunction against the strike but also directed the railroads to maintain the status quo ante by retaining the conditions which existed prior to the effective date of the orders which abolished the positions of the trainmen. Since a minor dispute was involved, the Court held that the District Court had no jurisdiction to maintain the status quo ante because the action constituted preliminary judgment on the merits of a dispute which was committed to the exclusive jurisdiction of the National Railroad Adjustment Board. To the same effect, see In re Hudson & Manhattan Railroad Co., D.C.S.D.N.Y.1959, 172 F. Supp. 329.

The decision of Judge Bryan in Baltimore & Ohio Co. v. United Railroad Workers Division, T.W.U. of America, D.C.S.D.N.Y.1959, 176 F.Supp. 53, so heavily relied on by the defendants, is not controlling. There the Court failed to determine whether the case involved a major or minor dispute. He referred that question back to the National Labor Board for determination. Here, the parties concede that this is a minor dispute.

Besides, Judge Bryan's order restoring the *status quo ante* was reversed by a divided Court on appeal to the Second Circuit in an opinion filed since the instant matter was presented to this Court. Baltimore & Ohio R. R. Co. v. United Railroad Workers Div. of Transport Workers Union of America, 2 Cir., 87 F.2d 271.

Until the processes set up by Congress under the Railway Labor Act are exhausted, a threatened strike or work stoppage is unlawful and should be restrained.

In vindication of the public policy declared by Congress in the Railway Labor Act and the duties enjoined on the defendants thereunder and to prevent ir-

reparable loss and grave ham to the plaintiff and the public, the elief prayed for in the complaint will be granted.

An appropriate order will be entered contemporaneously herewith.