In re CERTAIN CARRIERS REPRE-
SENTED BY the EASTERN, WEST-
ERN, AND SOUTHEASTERN CAR-
RIERS' CONFERENCE COMMITTEES
et al.

Misc. No. 41–63.

United States District Court
District of Columbia.

May 11, 1964.

Francis M. Shea, Washington, D. C., for Carrier parties hereto.

Lester P. Schoene, Washington, D. C., for Brotherhood of Locomotive Firemen and Enginemen.

J. William Doolittle, Dept. of Justice, Washington, D. C., for the Government.

HOLTZOFF, District Judge.

This is an application by certain railroad companies for an injunction to implement an award made by the special Arbitration Board created by the Congress to determine certain major questions in dispute between the railroad companies and the organizations of their employees. Specifically, the railroad companies apply for a permanent injunction

to restrain the representatives of the organizations of employees from calling, instigating or encouraging a strike or other stoppages in protest against applications of the award or any part of the award.

A brief history would be helpful in explaining the reasons for the conclusions that the Court is about to reach. Last August the Congress enacted a statute creating a special Arbitration Board and directing that certain issues in dispute between Class I railroad companies of this country, about 200 in number, and their employees, be arbitrated by that special Board.[1] Two issues were submitted. The principal issue was the status of firemen on Diesel engines in freight service. We have in this case an example of technological improvements on a large scale leading to reduction in the number of employees necessary to perform required services.

The special Arbitration Board conducted lengthy hearings, rendered a voluminous and a well-considered report, and made an award. The representatives of the employees filed objections to the award and brought an action in this Court to set it aside. This was their right, as provided by statute. After a full hearing this Court sustained the award of the Arbitration Board.[2] The representatives of the employees then took an appeal to the United States Court of Appeals for this Circuit. That, too, representatives of the employees had a right to do. The United States Court of Appeals affirmed the decision of this Court.[3] The representatives of the employees than applied to the Supreme Court for review. Again, that was their right. The Supreme Court refused to interfere with the award.[4]

The award is final and binding on both sides and must be obeyed by all parties. Since the arbitration was conducted un-der the aegis of Congress, the award becomes part of the law of the land. It appears from the papers submitted in support of the present application that certain leaders of employees' organizations have made statements that are susceptible of a construction that they were threatening to call a strike and hence came this application.

■ It appears that the representatives of the employees took the position that there are certain disputed questions as to the construction of the Award in regard to some details. These questions are being submitted to the Arbitration Board, which has reconvened for that purpose. The statements of the representatives of the employees indicate that it is their probable intention to call a strike if in the meantime the railroads start to effectuate the award in respect to the matters that are in dispute. However, if any questions of interpretation or construction of the terms of the award arise, they can be determined in the first instance by the Arbitration Board and then by recourse to the Courts. The effective date of the award may not be indefinitely deferred by submission of numerous questions of interpretation. Otherwise it would be possible to prolong the present situation interminably by successively raising new questions. Such dilatory tactics could defeat and frustrate the intention of the Congress.

■ If the railroads take any step in carrying out the award which later turns out to be erroneous, any employee who has been damaged in the meantime must receive full restitution. There is no question that this would be the legal obligation of the railroads if such a situation arises. That is no reason, however, for staying the carrying out of the award.

■ Any attempt to defy the award by resort to self help, such as a strike,

1. Act approved August 28, 1963; Public Law 88–108, 77 Stat. 132, 45 U.S.C.A. § 157; 1963 Pocket Part.
2. Brotherhood of Locomotive Firemen and Enginemen v. Chicago, Burlington & Quincy Railroad Co., 225 F.Supp. 11.

3. Affirmed February 20, 1964, 331 F.2d 1020.
4. Brotherhood of Locomotive Firemen and Enginemen v. Certain Carriers Represented by Eastern, Western and Southeastern Carriers, etc., 84 S.Ct. 1181, 1182.

would under these circumstances be unlawful. It would be contrary to principles of law and order and will not be tolerated. As long as the Courts are functioning, justiciable controversies must be determined by the Courts and the decrees of the Courts must be obeyed. The Courts are not impotent. They will take steps to enforce and effectuate their decrees. They have done so in the past in other matters; they will do so in the future.

■ Obviously, it is hardly necessary to state that anyone against whom an injunction runs, and the Court is going to grant one, who directly or indirectly instigates or encourages a strike will be guilty of contempt of court. Any employee who without lawful excuse fails to appear for work runs the risk of having such failure properly treated by his employer, either as a tender of resignation or as a ground for discharge. In that event, the employee might lose all the rights that he has accumulated by virtue of his employment and those that he has under this award.

Two comments may be added. The award of the Arbitration Board is in some aspects highly favorable to the employees. The Board holds that firemen are no longer necessary on 90 percent of freight engines because the services rendered by the firemen can be supplied by brakemen. The award nevertheless guarantees permanent employment status for life, that is, until he retires, resigns, or dies, to every fireman who has been in active service for more than two years. As I remarked during the argument, there are not many people in this country who have similar guarantees of their employment status. Those firemen who have been in the service for less than two years are awarded liberal severance pay. In other words, for years to come thousands of firemen will receive compensation from the railroads, and indirectly, therefore, from the customers of the railroads, and this means the public, for nominal and unnecessary services.

So I repeat that many aspects of this award are highly favorable to the employees. From the standpoint of the economy of this country they are probably desirable because it would be disastrous to have thousands of unemployed suddenly cast upon the community. Suppose the opposite occurred. Suppose the railroads were to say that they refused to carry these thousands of persons on their payroll for years to come and declined to comply with the award. The Court would not tolerate such a defiance and would compel them to comply with the award.

It has been said very often that this is the first time in the history of labor relations in this country that compulsory arbitration has been directed by the Congress. This is erroneous. True, this is the first time that such a course has been pursued on a nationwide scale, but compulsory arbitration has been in effect for years in labor relations of railroads in connection with minor disputes as they are called, that are being handled by the adjustment boards.

■ The Court will grant an injunction against calling any strikes, as prayed for by the moving party. The injunction will contain a provision that applications may be made at the foot of the decree in order that if any party on either side desires to present to the Court any question as to the application of the award or the manner in which it is being carried out, such an application may be entertained.

A transcript of this oral decision will constitute the findings of fact and conclusions of law.

Counsel may present a proposed injunction order on notice to the other side.