TEXAS PACIFIC–MISSOURI PACIFIC TERMINAL RAILROAD OF NEW ORLEANS, Plaintiff,

v.

SWITCHMEN'S UNION OF NORTH AMERICA and Local 330 thereof

and

T. F. Hackler, General Chairman, Switchmen's Union of North America, Local Chairman, Switchmen's Union of North America, Local 330,

P. C. Schneider, Vice Local Chairman, Switchmen's Union of North America, Local 330,

W. J. Faulkner, Secretary-Treasurer, Local Adjustment Committee, Switchmen's Union of North America, Local 330,

S. G. Arnold, Recording Secretary, Switchmen's Union of North America, Local 330,

R. S. Mammelli, President, Switchmen's Union of North America, Local 330,

A. O. Bender, Secretary, Switchmen's Union of North America, Local 330, Defendants.

Civ. A. No. 14608.

United States District Court
E. D. Louisiana,
New Orleans Division.
June 23, 1964.

Phelps, Dunbar, Marks, Claverie & Sims, and J. Barnwell Phelps, Peter G. Burke, New Orleans, La., for plaintiff.

Ralph L. Crawford, and John R. Calhoun, Savannah, Ga., for defendants.

AINSWORTH, District Judge.

The question presented is whether defendant, Switchmen's Union of North America, a duly certified collective bargaining agent pursuant to the Railway Labor Act, acting for the switchmen, may strike the property of plaintiff railroad company because of a dispute concerning the interpretation and application of an Award of National Railway Labor Arbitration Board No. 282 made under Public Law 88–108, 77 Stat. 132. Stated another way, shall we grant a preliminary injunction against the strike pending a decision by Board No. 282 through compulsory arbitration of the dispute.

Plaintiff, a common carrier, operates a terminal railroad at New Orleans serving primarily the Missouri Pacific Railroad Company, the Texas & Pacific Railway Company and the New Orleans and Lower Coast Railroad. The switchmen employed by them are represented by respondent labor organization. As a result of a dispute concerning an interpretation of the Award of Board No. 282 dated November 25, 1963, the switchmen stopped work and went out on strike on June 5, 1964. On the following day we issued a temporary restraining order against the strike and the order has been kept in effect pending a hearing of the present motion for a preliminary injunction. The switchmen promptly returned to work upon notification of our restraining order.

This case is but another phase of the long struggle which has been going on between the railroads and the labor unions representing their operating employees concerning alleged make work or featherbedding of jobs. Suffice it to say that the matter has occupied the attention of special presidential commissions, emergency boards, the President of the United States and Congress. On August 28, 1963, Congress passed a Joint Resolution (Public Law 88–108) prohibiting strikes by labor organizations growing out of the rail labor dispute and establishing an arbitration board to make a final and complete disposition of the matter by compulsory arbitration. Arbitration Board No. 282 was duly constituted under the provisions of the Joint Resolution and hearings were held as a result of which the Board filed its Award on November 26, 1963 in the United States District Court, District of Columbia. Judge Holtzoff of that Court thereafter sustained the Award, Brotherhood of Loc. Fire. & Eng. v. Chicago, B. & Q. R. Co., D.C., 225 F.Supp. 11 (1964), and his decision was affirmed by the United States Court of Appeals, District of Columbia, on February 20, 1964; certiorari denied by the United States Supreme Court on April 27, 1964.

A Special Board of Adjustment under the Award of Board No. 282 was then set up to resolve a dispute relative to the number of helpers to be employed in the crew consist on any yard engine, this issue not having been resolved by the Award. The Special Board made an

Award on May 16, 1964 settling the issue and setting up the various crew consists which would work in the New Orleans yards. Of twenty-three regularly assigned crews consisting of three men (foreman and two helpers), as to eight specified assignments, the Award held that the minimum crew would consist of three men, and in all other assignments the crew would consist of two men (foreman and helper).

Plaintiff has issued its "Instructions to Employees Calling Brakemen and Yardmen," (Ex. p. 4), which then raised the principal issue between the carrier and the union of whether or not plaintiff, under terms of the Award, when there are no protected employees (i. e., employees as of January 25, 1964) on the extra board, may assign a protected employee holding a position which is blankable to a vacant, non-blankable position. Defendant contends that the carrier may not do so and that the attrition provisions of the Award apply not only to the protected employee but to the job as well. Defendant avers that this procedure not only violates the right of the protected employee to be called on his day off, but also violates the right of the protected employee who has bid on an assignment of one of the blankable jobs.

However, the carrier's instructions do not contemplate any protected employee losing his job for such would be contrary to the Awards heretofore made.

We should not attempt to resolve this dispute between the carrier and the union. It is not necessary that we develop the arguments of the parties relative to the applicability of Section III, Parts D(2) and A(2), of Board 282's Award. However, we cannot say that the carrier has misinterpreted the provisions of the Award. The ultimate decision and resolution of this dispute is a matter peculiarly for Board 282. Congress, by Public Law 88–108, has recognized the wisdom of having a specialized board, expert in these matters, decide such disputes.

When the union found that it was unable to agree with the carrier about the lawfulness of the carrier's instructions, it should have petitioned Arbitration Board No. 282 for an interpretation and opinion. It does not have the right to strike under these circumstances, this right having been withdrawn by the Joint Resolution of Congress (P.L. 88–108). Its exclusive remedy therefore is to make application for an interpretation directly to the Arbitration Board and not to cause a work stoppage as it did by its strike of June 5, 1964 at New Orleans.

There is no question but that immediate, irreparable, serious and harmful damage will result to the public as a consequence of a strike of this kind which involves major trunk line railroads and their service at their New Orleans terminal. The shipping and receiving public will be damaged as will the railroad by a strike of this kind. The issue must be resolved by arbitration as Congress has required. If the railroad company has misinterpreted the Board's Award by issuing its instructions, the union's employees have a remedy and can require that the railroad company pay them for any overtime or other pay required by the circumstances.[1]

██ Defendant contends that the provisions of the Norris-LaGuardia Act apply here (29 U.S.C.A. § 107) and that the court is prohibited from granting an injunction under the circumstances. However, it should be remembered that P.L. 88–108, the Joint Resolution of Congress passed on August 28, 1963, is, in the language of the Senate Report No. 459 written by the Committee on Commerce in connection with the Resolution, "a one-shot solution through legislative

---

1. A parallel case has just been decided by Board No. 282 on June 9, 1964 where an interpretation of the Board's Award was made relative to firemen. The Board held that the carrier has a right to determine which of the blankable positions in a seniority district shall be made available to those protected helpers who are entitled to work as such. Defendant disputes this ruling as being analogous to the present case, however.

means to a situation which imperiled beyond question the economy and security of the entire Nation." We therefore look to the provisions of the Joint Resolution for disposition of the present case, and in our opinion it affords us ample authority for the action we are taking.

We are obliged therefore to grant the motion for a preliminary injunction, believing as we do that the dispute between the carrier and the union must be resolved as required by law by the National Railway Arbitration Board No. 282, and that this is the union's exclusive right.