**TEXAS PACIFIC–MISSOURI PACIFIC TERMINAL RAILROAD OF NEW ORLEANS, Plaintiff,**

v.

**SWITCHMEN'S UNION OF NORTH AMERICA and Local 330 thereof et al., Defendants.**

**Civ. A. No. 14608.**

United States District Court
E. D. Louisiana,
New Orleans Division.

March 3, 1965.

Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., J. Barnwell Phelps, Peter G. Burke, New Orleans, La., for plaintiff.

Ralph L. Crawford, John R. Calhoun, Savannah, Ga., for defendants.

**156**

AINSWORTH, District Judge:

We granted plaintiff, Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans, a preliminary injunction against a strike by the defendant, Switchmen's Union of North America, on the railroad's New Orleans property, D.C., 231 F.Supp. 1009, because Congress had enacted an emergency measure (Public Law 88–108 approved August 28, 1963, 77 Stat. 132) requiring binding arbitration of the labor dispute in order to avert strikes which then threatened essential transportation services of the Nation. The new emergency law related to disposition of the fireman (helper) and crew consist issues which were in dispute between the railroads and unions representing their employees; and compulsory arbitration of these issues under specified procedures by an arbitration board was required by the Congressional enactment. Involved in this case is an interpretation of an Award of Arbitration Board No. 282 which was established pursuant to the provisions of Section 2 of Public Law 88–108. The manner of filling temporary vacancies on non-blankable assignments of yard crew consists at the New Orleans Terminal was at issue between the railroad and the union. We held that Congress had withdrawn the union's right to strike by passage of this special legislation and that the union should have submitted the dispute to Arbitration Board No. 282 for answer and binding settlement of the dispute. Since the granting of our injunction the Switchmen's Union has submitted the issue unilaterally to Arbitration Board No. 282 and the Board filed its answer on September 16, 1964, which the union avers has maintained the correctness of its position in the original dispute and now requires that we dissolve the preliminary injunction in favor of Texas Pacific-Missouri Pacific and grant a preliminary injunction in favor of the Switchmen's Union on its cross-claim against Texas Pacific-Missouri Pacific.

Texas Pacific-Missouri Pacific is a common carrier terminal railroad at New Orleans serving primarily the Missouri Pacific Railroad Company, the Texas & Pacific Railway Company and the New Orleans and Lower Coast Railroad. Its switchmen are represented by the defendant, Switchmen's Union. At issue is a single question whether under the terms of the Award of Arbitration Board No. 282, when the extra board is exhausted, may the railroad assign a protected employee holding a position which is blankable to a vacant, non-blankable position when such vacancies can be filled by regularly assigned men on their off days.

A Special Board of Adjustment constituted by the Award of Board No. 282, by an Award dated May 16, 1964, changed crew consists for the New Orleans Terminal of twenty-three regularly assigned crews of three men (foreman and two helpers) to the following:

As to eight specified assignments the minimum crew would consist of three men (foreman and two helpers) and as to the balance of fifteen assignments, the minimum crew would consist of two men (foreman and helper). However, no protected employee would lose his job and the reduction in force would be taken care of by natural attrition so that there would be a total of fifteen blankable jobs on the fifteen crew consists which were to be reduced to two men each.

After we rendered our preliminary injunction in favor of the carrier, the union submitted the question to Arbitration Board No. 282, as follows:

"Under Section III Part D(2) does the Carrier have the authority to change rules in effect on the effective date of the Award when calling and using switchmen to fill temporary vacancies on non blankable assignments when such vacancies can be filled by protected employees under existing rules."

In its submission of the question the union said:

"It has been the rule on this property, established by many years practice, to use regularly assigned

men who desire to work on their days off to supplement the extra board and upon the extra board becoming exhausted, these men are called to fill vacancies on the crews."

The union pointed out that the carrier claimed authority under the Award of Arbitration Board No. 282 to put into effect a new rule that "The regularly assigned men would no longer be called on their days off to fill temporary vacancies on the 8 shifts requiring a mandatory 3 man crew, but that these vacancies would be filled by pulling a man from one of the 15 shifts declared to be blankable and working that crew with only 2 men." Arbitration Board No. 282 answered the question on September 16, 1964, as follows:

"Answering this question in terms of the example given by the SUNA in its accompanying statement, if a rule exists requiring the filling of vacancies after the extra board is exhausted by men on their days off, this local rule should not be disturbed, provided the vacancies involved are on non-blankable assignments."

■ The carrier states that it did not participate or know about the union's submission of the question, and contests the accuracy of the union's statement that "It has been the rule on this property, established by many years practice, to use regularly assigned men who desire to work on their days off to supplement the extra board and upon the extra board becoming exhausted, these men are called to fill vacancies on the crews." However, the evidence convinces us that this was the usual practice and had been for a number of years; accordingly, we believe such practice had become the rule and that Arbitration Board No. 282's answer to the switchmen's question favors the union, and that this local rule or practice should not be disturbed.

The carrier concedes that at the time the first proceeding leading to the preliminary injunction was heard, it stated through counsel "that the remedy of defendants was not to strike (such strike having been withdrawn by PL 88–108),

but to seek an interpretation from Board 282." (Plaintiff's reply memorandum, p. 1.) But it now asserts that the matter should be submitted for arbitration under Section 3 of the Railway Labor Act, 45 U.S.C.A. § 153. It contends that Arbitration Board No. 282 has answered some of the questions presented by various parties since its original Award by stating that the questions presented involved "questions of fact appropriate for determination under the procedures of the Railway Labor Act for the settlement of minor disputes" (i. e., as provided by Section 3 of said Act). It is true that Board 282 has answered some of the questions in that manner. But it did not answer the union's question pertaining to the dispute here by referring it to further arbitration under Section 3 of the Act. It said rather directly that "this local rule should not be disturbed." The legislative history and the Joint Resolution of Congress (PL 88–108) indicate that there were to be no changes in rates of pay, rules or working conditions except pursuant to an arbitration award of the board to be set up (i. e., Board No. 282). The Senate Report of the Committee on Commerce states in its brief summary of the Joint Resolution that "In addition, the joint resolution would forbid any change in rates of pay, rules, or working conditions which are the subject of this dispute except by agreement or pursuant to the terms of the bill, and would bar any strike or lockout over the rule changes." U.S.Code Cong.News, 88th Cong., 1st Sess., 1963, p. 833.

■ It would have been better had the question in dispute been presented to Arbitration Board No. 282 by a joint submission of the union and the carrier. But we cannot say that the union did not fairly present the question in its unilateral submission. We think it stated the facts and correctly set forth a practice which had occurred on the property for a number of years, which amounted to a rule. We hold that such a practice did exist. There was no dispute about this fact when we originally

pre-tried and heard this matter prior to granting the preliminary injunction.

■ Under the circumstances the status quo must be restored, for the Arbitration Board specially set up by Congress to arbitrate the question of crew consists has held that the local rule should not be disturbed. Accordingly, the carrier must return to the practice of filling temporary vacancies on non-blankable assignments after the extra board is exhausted by regularly assigned men on their off days. The carrier may not fill these vacancies by pulling a man from one of the fifteen shifts declared to be blankable and working that crew with only two men.

The preliminary injunction heretofore granted in this matter in favor of plaintiff, Texas Pacific-Missouri Pacific, is dissolved; the cross-claim of defendant, Switchmen's Union, for a preliminary injunction restoring the status quo forthwith as above set forth is hereby granted.

Decree accordingly.