NEW YORK, CHICAGO AND ST. LOUIS
RAILROAD COMPANY, Plaintiff-
Appellee,

v.

BROTHERHOOD OF LOCOMOTIVE
FIREMEN AND ENGINEMEN
et al., Defendants-Appellants.

No. 16260.

United States Court of Appeals
Sixth Circuit.

March 29, 1966.

Harold C. Heiss, Cleveland, Ohio (Russell B. Day, Cleveland, Ohio, on the brief), for appellants.

Edwin Knachel, Cleveland, Ohio (Clay Marsteller, Cleveland, Ohio, on the brief), for appellee.

Before EDWARDS, Circuit Judge, McALLISTER, Senior Circuit Judge, and KENT, District Judge.[*]

EDWARDS, Circuit Judge.

This appeal represents another round in the long-continued dispute between the Brotherhood of Locomotive Firemen [1] and the railroads of the United States concerning the employment of firemen on diesel engines.

Basically, of course, the dispute was resolved by federal legislation in Public Law 88–108, 77 Stat. 132 (1963), 45 U.S.C. § 157 note (1964), which established an Arbitration Board to make a final and binding resolution of the long-standing issues involved. The congressional intent to employ compulsory arbitration, and, by law, to require acceptance of the award is plain from the following provisions:

"[N]o carrier which served the notices of November 2, 1959, and no labor organization which received such notices or served the labor organization notices of September 7, 1960, shall make any change except by agreement, or pursuant to an arbitration award as hereinafter provided, in rates of pay, rules, or working conditions encompassed by any of such notices, or engage in any strike or lockout over any dispute arising from any of such notices. Any action heretofore taken which would be prohibited by the foregoing sentence shall be forthwith rescinded and the status existing immediately prior to such action restored." Public Law 88–108, 77 Stat. 132 (1963), 45 U.S.C. § 157 note (1964).

The Arbitration Board reported November 26, 1963. Its award (Award 282) resolved the dispute generally in favor of the railroads' position. However, to cushion the impact of the decision, it also provided for the union to have the right to veto one of every ten job eliminations proposed by the railroads. And the award made careful provision for job protection for every fireman with over two years' seniority.

The award by no means spelled out answers to every category of problem involved in its implementation. The implementation problems were anticipated, however, and Congress provided that disputes pertaining to the interpretation of the award should be referred back to the Arbitration Board for resolution.

With this background, we then turn to the present dispute which arose within the first six months after the arbitration award had become effective. Plaintiff-appellee railroad company on June 22, 1964, posted a notice pertaining to the elimination of portions of firemen's jobs on its Peoria Division. The notice provided:

"ALL FIREMEN—Peoria Division (Notice Boards).

"Reference Arbitration Award 282 governing the use of firemen.

"Effective 12:01 A.M., July 1, 1964, the use of firemen in the state of Illinois will be discontinued except for non-blankable position of F–8.

"Firemen used west of Frankfort account Indiana state law will be governed by chief train dispatcher's instructions regarding return to Frankfort, but in no case will any fireman position, except non-blankable position F–8, work west of Hoopeston. All other firemen as above stated will terminate westward trip on arrival at returning point."

---

[*] Honorable W. Wallace Kent, Chief Judge, U. S. District Court for the Western District of Michigan, sitting by designation.

1. Brotherhood of Locomotive Firemen and Enginemen.

The nature of this order was materially affected by the fact that the State of Indiana has a full crew statute on its legislative books, while Illinois does not.

The railroad contended (and contends) that this notice represented legitimate and proper implementation of the Arbitration Board's award. The union contended (and contends) that the situation dealt with in the June 22, 1964, order was not covered by the award, was subject to normal processes of collective bargaining, and it promptly gave notice of intent to strike.

The railroad responded by filing a complaint before the United States District Court for the Northern District of Ohio, Eastern Division, seeking to enjoin the strike.

The complaint was heard before Judge Connell on two occasions and he issued first a restraining order, and then a preliminary injunction enjoining the strike absolutely. The facts pertaining to this dispute are not in controversy. The District Judge's conclusions of law and preliminary injunction provided:

"1. The Court has jurisdiction over the subject matter of the action and the defendants named in the complaint.

"2. The Plaintiff Carrier has no adequate remedy at law and the Court has jurisdiction to grant injunctive relief.

"3. The dispute herein raises questions as to the interpretation and application of the Agreement between the Defendant Brotherhood of Locomotive Firemen and Enginemen and the Plaintiff Carrier as modified by the Award of Arbitration Board No. 282 and, therefore, is a 'minor dispute' under the Railway Labor Act. Defendants' threat of strike on the property of Plaintiff Carrier is illegal.

"5. [sic] A strike by the defendants on the property of Plaintiff Carrier as a result of this 'minor dispute' would result in irreparable damage to Plaintiff's property in excess of Ten Thousand Dollars.

"6. Plaintiff Carrier is entitled to the relief prayed for in its complaint pertaining to its motion for a preliminary injunction.

"Dated: Sept. 2, 1964.

    "JAMES C. CONNELL,

    "United States District Judge."

"The Court having made and filed its findings of fact and conclusions of law, it is

"ORDERED, that the Brotherhood of Locomotive Firemen and Enginemen and its officers, agents, servants, employees and attorneys, and all persons, including all persons represented by the defendant Brotherhood employed by the plaintiff and all persons in active concert and participation with them, and all persons acting by, with, through and under them, or by their order be and they hereby are restrained, enjoined and ordered to cease and desist until further order of this Court, from:

"(a) calling, ordering, authorizing, encouraging, inducing, approving, continuing, starting or permitting any strike, work stoppage or slow-down on the plaintiff's line of railroad; and

"(b) in any manner interfering with or inducing, or endeavoring to induce, any person employed by the plaintiff from performing his or her work and duties, and from in any manner endeavoring to induce, any such employees to desist therefrom;

provided that plaintiff first give security in the sum of $25,000.00 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined. * * * "

Appellants then appealed to this court under 28 U.S.C. § 1292(a) (1), contending (among other things) that the subject matter of the proposed strike was not covered by Award 282 of the Arbitration Board, and the injunction was issued in violation of the Norris-LaGuardia Act and was void.

No requirement that either party proceed to resolve the underlying dispute by referring it to the Arbitration Board for an interpetation had been included in the Court's order. And subsequent to the issuance of the injunction, neither party made any move to do so voluntarily as far as this particular dispute is concerned.

At oral hearing on this appeal, however, it was asserted that other similar problems had been submitted to the Arbitration Board between the time of the injunction and the time of the hearing on this appeal, and that Arbitration Board decisions had been made thereon.

The court thereupon asked both parties to supplement the appellate record by furnishing any and all Arbitration Board decisions that either party considered relevant. Such supplementary materials were subsequently furnished.

On inspection of these decisions, it appeared to the court that the answer to Brotherhood of Locomotive Firemen and Enginemen's Question No. 54 was close in point to the instant dispute. That decision held:

BLF&E Question No. 54. "Does Part B of the Award contemplate that the carrier may abolish firemen-helper positions without discontinuing operation of the entire assignment?"

Board's Answer. "(a) The elimination of 'jobs' and the creation of new jobs must be handled in conformity with existing collective agreement provisions.

"(b) In the posting of interim crew assignment notices under Section II, Part B(3), all assignments that have been discontinued or created during the preceding 3-month period must be included in such notices. For example, a crew assignment was bulletined to operate from A through C to B. The assignment of the fireman on this crew was properly discontinued. Thereupon a new assignment was properly created operating from A to C. A fireman has not thereafter been used from C to B. Under this example, the interim notices should show that the fireman assignment A to B had been discontinued and that a new assignment, A to C, had been created. The operation C to B must also be shown as a separate operation for these purposes.

"(c) Temporary vacancies on vetoed jobs must be filled the entire distance of the fireman's assignment."

The court then, through its clerk, addressed the parties asking responses to four questions. The first two of these were:

Question No. 1 "Does the Arbitration Board's answer to Question No. 54 represent support for the appellee's contention that the appellee's order of June 22, 1964, is authorized by the Arbitration Board?"

Question No. 2. "If not, why not?"

We read the responses filed by both parties as conceding in fact (if not in words) that the Arbitration Board's answer to BLF&E Question No. 54 is directly related to the instant dispute. If we misinterpret either party's language in this regard, no prejudice results because we are ourselves by direct inspection convinced that the answer to Question No. 54 is both relevant and controlling.

We feel, as did the District Judge, that the controversy over appellee's June 22, 1964 notice which occasioned this case is clearly one pertaining to the application of Award 282 and that Section 1 of Public Law 88–108 is applicable to it. Section 1 contains a direct prohibition on strikes and lockouts: "[O]r engage in any strike or lockout over any dispute arising from any of such notices."

Public Law 88–108 also provided for impartial and binding arbitration of both the fundamental dispute and disputes over interpretation of the award.

This appeal does not attack the constitutionality of Public Law 88–108, and we do not pass thereon. (But see, Brotherhood of Locomotive Firemen and Enginemen v. Chicago, Burlington & Quincy Railroad Company, 225 F.Supp. 11 (D.C. D.C.1964), aff'd, 118 U.S.App.D.C. 100, 331 F.2d 1020 (1964), cert. denied, 377

U.S. 918, 84 S.Ct. 1181, 12 L.Ed.2d 187 (1964)). Nor does this appeal attack the validity of the basic award of Arbitration Board No. 282. (See In re Certain Carriers Represented by the Eastern, Western, and Southeastern Carriers' Conference Committees, 229 F.Supp. 259 (D.C. D.C.1964)).

Appellant does, however, assert that the use of federal court injunctive power is barred by the terms of the Norris-LaGuardia Act and that this dispute is a "major" rather than a "minor" dispute.

■ The Norris-LaGuardia Act applicability to subsequent more specific legislation has previously been squarely decided against appellant's position by the United States Supreme Court.

■ A specific act of the nature of Public Law 88–108 is generally held to amend by implication any preceding general statute of the nature of the Norris-LaGuardia Act (29 U.S.C. § 101) in conflict therewith. Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 353 U.S. 30, 41–42, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Virginian Railway v. System Federation No. 40, 300 U.S. 515, 563, 57 S.Ct. 592, 81 L.Ed. 789 (1937).

■ And it may be even more to the point to note that as opposed to this very argument (as well as a fundamental constitutional attack) the Supreme Court has unanimously upheld the right of Congress to prohibit strikes in the railroad industry over "minor" disputes where reasonable means of reaching impartial settlement of same have been provided in the same act. Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., supra, 353 U.S. at 39–42, 77 S.Ct. 635. This decision upheld the validity of the Railway Labor Act, 45 U.S.C. §§ 151–164, in its provision of compulsory arbitration of "minor" disputes and its prohibition of strikes occasioned thereby. (See Railway Labor Act § 3, First (i), 48 Stat. 1191 (1934), 45 U.S.C. § 153, First (i) (1965)). We view it as a close and controlling parallel to the attack upon similar provisions in Public Law 88–108

made in this appeal. While appellant's contention that this is a "major" rather than a "minor" dispute might at least arguably apply to the whole of the "firemen on diesel engines" dispute, in our view of the factual record here, it can hardly be said to apply to this small facet of that larger argument. Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., supra; Elgin, Joliet & Eastern Railway Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), aff'd on rehearing, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946).

■ What we have already said demonstrates our belief that Public Law 88–108 and not the Railway Labor Act controls decision of this controversy.

■ We find no merit to appellant's contention that the National Mediation Board had exclusive jurisdiction of this dispute. The record clearly demonstrates that the National Mediation Board had not taken jurisdiction of this dispute as an E case dispute.

Nor do we believe that the fact that Public Law 88–108 plainly empowers the Arbitration Board to deal with disputes over interpretation of Award 282 and vests the District Court in the District of Columbia with jurisdiction to review such interpretations, acted to deprive the District Judge who issued the injunction in this case of jurisdiction to do so. The complaint filed before the District Judge did not seek interpretation of the agreement. Cf. Brotherhood of Railroad Trainmen v. Missouri Pacific Railroad Company, 230 F.Supp. 197 (E.D.Mo. 1964). It sought the assistance of a federal court to restrain a violation of a specific prohibition contained in a federal statute obviously designed for national application.

■ We believe the District Court had jurisdiction to issue an injunction in this case. Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 353 U.S. 30, 77 S.Ct. 635 (1957); Pennsylvania Railroad Co. v. Transport Workers Union, 191 F.Supp. 915 (E.D.Pa. 1960), aff'd, 280 F.2d 343 (C.A. 3, 1960);

Pennsylvania Railroad Co. v. Local 2013 of United Railroad Workers, 178 F.Supp. 53 (E.D.Pa.1959); Texas Pacific-Missouri Pacific Terminal Railroad Co. of New Orleans v. Switchmen's Union of North America, 231 F.Supp. 1009 (E.D. La.1964), modified, 239 F.Supp. 155 (E.D.La.1965).

It remains to be said that the procedure employed by appellee railroad in its June 22, 1964, notice varied from that approved by the answer to BLF&E's Question No. 54. Both parties appear to agree that the No. 54 method would result in the Brotherhood having the right to veto one additional "blankable" job.

■ We believe that in the interest of the most equitable possible result, the District Court should have issued the injunction conditioned upon appellee railroad company seeking an immediate interpretation from the Arbitration Board on the method of job elimination proposed in its June 22, 1964 notice.[2] Where there is any doubt about whether or not some proposed change in the status quo is based on the Arbitration Board's award, we believe injunctive relief should be coupled with such a requirement. (Note the interesting history of the dispute related in Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans v. Switchmen's Union of North America, supra, with modifications after award of Arbitration Board 282 in 239 F.Supp. 155 (E.D.La.1965)).

■■ In wielding the awesome power of injunctive relief, the federal courts have the duty of seeking to protect the rights of all parties, including the one enjoined. As the Supreme Court said:

"And if the legal right is doubtful, either in point of law or of fact, the court is always reluctant to take a course which may result in material injury to either party; for the damage arising from the act of the court itself is *damnum absque injuria,* for which there is no redress except a decree for the costs of the suit, or, in a proper case, an action for malicious prosecution. To remedy this difficulty, the court, in the exercise of its discretion, frequently resorts to the expedient of imposing terms and conditions upon the party at whose instance it proposes to act. The power to impose such conditions is founded upon, and arises from, the discretion which the court has in such cases, to grant, or not to grant, the injunction applied for. It is a power inherent in the court, as a court of equity, and has been exercised from time immemorial. * * *" Russell v. Farley, 105 U.S. 433, 438, 26 L.Ed. 1060 (1881).

Corica v. Ragen, 140 F.2d 496 (C.A. 7, 1944); Cross Company v. UAW Local No. 155, 371 Mich. 184, 199, 123 N.W.2d 215 (1963); Developments in the Law, Injunctions, 78 Harv.L.Rev. 994, 1063–64 (1965). Accord, Hecht Co. v. Bowles, 321 U.S. 321, 329–330, 64 S.Ct. 587, 88 L.Ed. 754 (1944).

If the parties cannot amicably and voluntarily stipulate as to the remaining differences (which now appear to us to be very narrow), the District Court should on remand amend its order to provide for the condition described above.

The order of the District Court is affirmed as modified, and the case is remanded to that court for such additional proceedings as may be required.

2. Appellants contend another condition should have been the railroads' maintenance of the status quo. However appropriate such a condition may be in some circumstances (See Railroad Yardmasters of America AFL-CIO v. St. Louis-San Francisco Railway Co., 231 F.Supp. 986 (N.D.Texas 1964)), the District Judge clearly felt that appellee's order of June 22, 1964, pertained to job eliminations which were specifically authorized by the award of Arbitration Board No. 282. On this record we cannot say he was in error. This record appears to us to leave only the method of such elimination (and one veto) in dispute.